[No. E004149. Fourth Dist., Div. Two. Jan. 27, 1989.]

In re STEVEN AZZARELLA on Habeas Corpus.

COUNSEL

Gerald J. Geerlings, County Counsel, and Katherine A. Lind, Deputy County Counsel, for Appellant.

John K. Van de Kamp, Attorney General, George M. Hendrickson, Deputy Attorney General, Kenneth L. Nelson, County Counsel (Santa Barbara), Patricia J. Clancy, Deputy County Counsel, Donald L. Clark, County Counsel (Santa Clara), Susan A. Chapman, Deputy County Counsel, Alan K. Marks, County Counsel (San Bernardino) and Charles J. Larkin, Deputy County Counsel, as Amici Curiae on behalf of Appellant.

Joseph E. Taylor, Public Defender, and Cheryl Thompson, Deputy Public Defender, for Respondent.

Julian J. Linde, James J. Preis, Barbara M. Bennett, Glenn Mowrer, Public Defender (Santa Barbara) and Joseph A. Linggi, Deputy Public Defender, as Amici Curiae on behalf of Respondent.

## OPINION

**HOLLENHORST, J.**—Petitioner was brought to Riverside General Hospital for a 72-hour detention for treatment and evaluation pursuant to Welfare and Institutions Code section 5150[1] and subsequently was certified for an additional 14 days of intensive treatment on the grounds that he was gravely disabled as a result of a mental disorder. (§ 5250.) Petitioner sought judicial review by way of a petition for writ of habeas corpus. (§ 5275.) The evidentiary hearing was set for the following day at which time the County of Riverside (County) filed a motion for order directing petitioner to assume the burden of proof or, in the alternative, for an order reducing the standard of proof.

Prior to taking evidence, the trial court denied the County's motion in its entirety and directed the County to assume the burden of proof and to justify certification by clear and convincing evidence. At the conclusion of the evidentiary hearing, the court granted the petition and petitioner was released. The County appeals, contending the trial court erred in requiring the County to assume the burden of proof and in requiring the County to justify certification by clear and convincing evidence.[2]

### INTRODUCTION

"It cannot be disputed that the treatment and possible necessary confinement of the mentally ill presents many special and ofttimes difficult problems.

". . . . . . . . . . . . . . . . . . . .

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

[2] Although Penal Code section 1507 authorizes this appeal, the matter appears to be moot in that the petitioner has been released and the 14-day certification period has long since expired. Nonetheless, we retain jurisdiction on the grounds that the matters to be addressed in this case are of significant public interest and are likely to recur yet evade review. (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 876-877 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392].)

■ "Although the LPS act authorizes a process somewhat more medical than the former civil commitment procedures which it repealed, nevertheless the provisions of the act . . . demonstrate the concern of the Legislature that the patient's rights receive full protection at all times." (*Thorn* v. *Superior Court* (1970) 1 Cal.3d 666, 673-674 [83 Cal.Rptr. 600, 464 P.2d 56].)

The goals of the Lanterman-Petris-Short (LPS) Act as set forth in section 5001 include ending "the inappropriate, indefinite, and involuntary commitment of mentally disordered persons"; eliminating legal disabilities; guaranteeing and protecting public safety; and safeguarding individual rights through judicial review.

Prior to enactment of the LPS Act, the Legislature conducted an extensive study of California's commitment process and found that thousands of people were routinely detained for observation in violation of the law and that precommitment examiners often presumed mental disorder and performed examinations on an assembly-line basis. (Lanterman & Petris, The Mental Health Act of 1967: Summary of an Act to Solve the Dilemma of Mental Commitments in California (Apr. 1967) p. 6.) The new legislative scheme was intended to solve these problems.

Under our current system, an individual may be brought to an appropriate facility for an evaluation if there is "probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled." (§ 5150.) If the facility admits the person, it may detain him or her involuntarily for no more than 72 hours for evaluation and treatment. (§ 5151.[3]) At the end of the 72-hour period, the facility must release the person, refer the person for further care or treatment on a voluntary basis, institute conservatorship proceedings or certify the person for 14 days' involuntary treatment. (§ 5152.)

An individual may be certified for intensive treatment if the professional staff at the facility has conducted an evaluation of the person and has found the person is a danger to himself or others or gravely disabled, as a result of mental disorder. The facility must be designated to provide intensive treatment and must agree to admit the person. Finally, the person must have been advised of the need for treatment and had been unwilling or unable to accept treatment on a voluntary basis. (§ 5250.)

---

[3] The 72 hours can actually last twice that long as Saturday, Sunday and holidays may be excluded.

## BURDEN OF PROOF

■ The County initially contends that in a traditional habeas corpus proceeding, the petitioner bears the burden of proving by a preponderance of the evidence all facts upon which his claim for relief is based, and that, as the Legislature did not expressly mandate otherwise, this same rule should apply to a habeas corpus proceeding brought under section 5276. However, a brief review of the procedure in a habeas corpus proceeding demonstrates that the County must bear the burden of proof on the lawfulness of the detention.

■ Habeas corpus, traditionally, is "an extraordinary and *collateral* action that lies to review a claim of denial of substantive constitutional rights that may have affected the integrity of the fact finding process [citations], or a claim that attacks not the judgment itself but the legality of the punishment [citations]." (*In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2 [191 Cal.Rptr. 658, 663 P.2d 216], italics added.)

In a traditional habeas corpus proceeding, the petition itself serves a limited function. It must allege unlawful restraint, name the person by whom the petitioner is restrained and specify the facts on which he bases his claim that the restraint is unlawful. (Pen. Code, § 1474; *In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257].) If he fails to state sufficient facts for release, the court may summarily deny the petition. However, if taking the facts as alleged as true, the petitioner establishes a prima facie case for relief on habeas corpus, then an order to show cause should issue. (23 Cal.3d at p. 194.) ■ The return to the order to show cause becomes the principal pleading, analogous to the complaint in a civil proceeding. It must allege facts to establish the legality of the challenged detention. (*In re Saunders* (1970) 2 Cal.3d 1033, 1047 [88 Cal.Rptr. 633, 472 P.2d 921].) The traverse is equivalent to the answer. (*Ibid.*) *New* matters set up in the traverse (or in the petition, if the petition is treated as the traverse) which tend to invalidate the apparent effect of the process set forth in the return must be proved by the party alleging it, namely the petitioner. (*In re Masching* (1953) 41 Cal.2d 530, 533 [261 P.2d 251].)

■ A habeas corpus proceeding under section 5276, however, usually is not a collateral attack on the validity of some prior proceeding. It is the sole avenue of review of the certification decision in many instances. Unlike traditional habeas corpus proceedings, the court acting under the statute has no discretion to summarily deny the petition but rather must either order the person released or conduct an evidentiary hearing. In the petition, the petitioner need do no more than allege that he is being detained. In the

return and at the evidentiary hearing, the facility (County) must bear the burden of justifying the detention.

■ Further, because a traditional petition for writ of habeas corpus is usually preceded by a hearing, the return carries with it a strong presumption of regularity which, without proof by defendant of additional matters to negate the lawfulness of the detention, is sufficient to deny issuance of the writ. (*In re Smith* (1970) 2 Cal.3d 508, 510 [86 Cal.Rptr. 4, 467 P.2d 836].) The burden of overcoming this presumption rests upon the petitioner. (*In re Carlson* (1966) 64 Cal.2d 70, 75 [48 Cal.Rptr. 875, 410 P.2d 379].)

■ Where, as here, for example, no prior independent review has occurred, due process mandates the government carry the burden of proof on the issue of the lawfulness of the detention, i.e., that the criteria for certification have been met, without benefit of any presumption of regularity. ■ " 'Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt.' " (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].)[4]

## STANDARD OF PROOF

■ Having determined that the County must carry the burden of proof, the more difficult question is what standard of proof applies in this habeas corpus proceeding. We start with the general proposition that, except as otherwise provided by law, the burden of proof normally required in a civil action is proof by a preponderance of the evidence. (Evid. Code, § 115.) Law, of course, includes constitutional, statutory and decisional law. (Evid. Code, § 160.) ■ ■ ■ ■ ■ The question thus becomes whether *Addington* v. *Texas* (1979) 441 U.S. 418 [60 L.Ed.2d 323, 99 S.Ct. 1804], *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1], or due process requires a higher standard of proof.[5]

■ In *Addington* v. *Texas, supra,* 441 U.S. 418, the United States Supreme Court determined that the standard of proof for an *indefinite* civil

---

[4] We disagree with the court in *In re Grant* (1988) 198 Cal.App.3d 1458, 1462 [244 Cal.Rptr. 552], footnote 2, to the extent it suggests that the burden of persuasion is somehow different than the burden of proof and to the extent it suggests that the burden of persuasion lies with the petitioner.

[5] Amicus, County of Santa Clara, suggests the appropriate standard of proof should be the same as that applicable in the certification review hearing, i.e., probable cause. (§§ 5256.5, 5256.6.) We reject this contention. First, probable cause is not a recognized standard of proof in judicial proceedings. More importantly, Evidence Code section 115 prohibits a standard of proof less stringent than preponderance of evidence unless expressly authorized. As the Legislature has not expressed the standard of proof in a habeas corpus proceeding, we are precluded from applying a standard less stringent than preponderance of the evidence.

commitment to a state hospital must be no less than clear and convincing because of the significant deprivation of liberty that results from the commitment as well as the stigma attached. ▮ In *Conservatorship of Roulet, supra,* 23 Cal.3d 219, our California Supreme Court determined that a petitioner in a conservatorship proceeding brought under the LPS Act must establish grave disability by proof beyond a reasonable doubt, again because of the significant deprivation of liberty and the social stigma resulting from the determination. Although the United States Supreme Court and our California Supreme Court determined that standards higher than preponderance of the evidence were required for civil commitment, neither case addressed the issue within the context of a 14-day certification period. Both cases were addressing the required standards of proof for longer periods of commitment and commitments to state hospitals. Thus, we do not believe these cases are dispositive of the issue of the proper standard of proof for a 14-day certification.[6]

▮ "[I]dentification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing the individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622].) ▮ A review of these factors, in our opinion, warrants the conclusion that preponderance of the evidence is constitutionally sufficient for the 14-day certification.

There can be little question that the private interest at stake—personal liberty—is one most cherished. Nor can there be any dispute that civil commitment for any purpose constitutes a significant deprivation of that interest. (*Addington* v. *Texas, supra,* 441 U.S. at p. 425 [60 L.Ed.2d at pp. 330-331].) The fact the deprivation is through a "civil" procedure does not negate that it is still incarceration against one's will. (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 225.)

---

[6] Nor do we believe *Suzuki* v. *Yuen* (9th Cir. 1980) 617 F.2d 173 is dispositive. In that case the Ninth Circuit determined the Hawaii statute authorizing a five-day hold for evaluation upon a showing of "sufficient evidence" was not unconstitutional if interpreted to mean "constitutionally sufficient evidence" and if more than a "mere preponderance" of the evidence was required. The court did not specifically determine what standard of proof would be permissible but rather deferred further construction of the statute to the Hawaii courts in light of *Addington.*

However, the length of confinement and the reasons for confinement are also relevant. According to the authors of The Mental Health Act of 1967, Assemblyman Frank Lanterman and Senator Nicholas C. Petris, the certification procedure was intended to provide treatment without delay in emergency situations when voluntary efforts are not possible. (Summary of an Act to Solve the Dilemma of Mental Commitments in California, op.cit.supra, p. 11.) It entails no legal disabilities and is different from commitment in that there are specific criteria as well as a specific short period for treatment. Involuntary treatment, even for 14 days, is the last alternative to be considered. Facilities are required to provide treatment in ways that are least restrictive of personal liberty. (§ 5325.1, subd. (a).) Further, those certified for 14 days are no longer confined to a state hospital, but, rather must be given treatment locally. (§ 5120.) Those certified retain an extensive array of rights which cannot be restricted or denied without good cause. (§§ 5325, 5325.1, 5326.) Thus the deprivation of liberty, while still a serious concern, is far less than that imposed upon the conservatee in *Roulet* or the petitioner in *Addington.*

In addition to the deprivation of liberty interest, our courts have recognized that those persons classified as suffering from a mental illness suffer from a social stigma as well. (*Conservatorship of Roulet, supra,* 23 Cal.3d at pp. 228-229.) However, the Legislature again has attempted to reduce if not eliminate the social stigma that may result from certification by eliminating the legal disabilities which used to attach upon a finding of mental disorder and by prohibiting the use of any such finding as evidence in any civil or criminal proceeding. (§ 5277.)

Moreover, it must be acknowledged that some of the social stigma attached may be a product of the illness itself. "Appellees overlook a significant source of the public reaction to the mentally ill, for what is truly 'stigmatizing' is the symptomatology of a mental or emotional illness. [Citations.] The pattern of untreated, abnormal behavior—even if nondangerous—arouses at least as much negative reaction as treatment that becomes public knowledge. A person needing, but not receiving, appropriate medical care may well face even greater social ostracism resulting from the observable symptoms of an untreated disorder." (*Parham* v. *J.R.* (1979) 442 U.S. 584, 601 [61 L.Ed.2d 101, 118, 99 S.Ct. 2493].)

Additionally we must consider the risk of erroneous deprivation of the liberty interest. It has been repeatedly recognized that this is not an idle concern. "[T]he difficulty of defining mental illness, the factfinder's deference to psychiatric testimony, and the paternalistic attitude of some appointed counsel" were cited by our Supreme Court as some of the reasons

for a higher standard of proof. (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 235.)

Although there is a real risk of erroneous deprivation, it is minimized by the requirement of readily observable evidence of mental disorder. Before an individual may be detained for evaluation or treatment, there must be probable cause to believe the person is gravely disabled or a danger to himself or others. (§ 5150.) ■■■ Probable cause means *"specific* and *articulable* facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion" that the person is mentally disordered. (*People* v. *Triplett* (1983) 144 Cal.App.3d 283, 288 [192 Cal.Rptr. 537], italics added.)

Similarly, when an individual is certified for 14 days' treatment, those providing the certification must provide the specific facts which form the basis for their decision in the notice of certification. (§ 5252.) Requiring some objective, verifiable evidence of dangerousness or grave disability eliminates some of the possibility of error inherent in the concededly vague definition of mental disorder or mental illness, suggesting that a stricter standard of proof is not warranted.

■■■ Finally, the governmental interests and the fiscal and/or administrative burdens that may arise with a stricter standard of proof warrant use of a preponderance of the evidence standard. Society's interest in the appropriate certification of mentally disordered individuals is founded both in its interest in assuring public safety and in the concept of *parens patriae.* Its interests must be considered compelling. A stricter standard at this early phase may result in the government being unable to preserve its interests. The treating facility is required to make its evaluation and a determination whether treatment is warranted and, if so, whether treatment requires further involuntary confinement, within 72 hours, a relatively short period of time. Clearly, the ability to gather sufficient evidence to persuade a court that certification is necessary is affected by the time constraints imposed by the Legislature. Requiring a higher standard of proof may result in people in need of emergency treatment and assistance being released without receiving it.

"[T]he utilization of the time of psychiatrists, psychologists, and other behavioral specialists in preparing for and participating in hearings rather than performing the task for which their special training has fitted them" also suggests a lower standard is preferred. (*Parham* v. *J.R., supra,* 442 U.S. at p. 606 [61 L.Ed.2d at p. 121].) A higher standard of proof could mean *more extensive preparation and possibly longer hearings,* causing more disruption of the treatment process.

In total, while undeniably involuntary confinement for any length of time affects an individual's liberty interest and results in other adverse social consequences, the Legislature has attempted to balance this with society's interest in providing treatment and its interest in providing for public safety. There has been no showing that the Legislature's attempt in this regard has not been successful.[7]

## THE PRESENT CASE

 Although the trial court utilized the "clear and convincing evidence" standard in the present case, we do not believe a preponderance of the evidence standard would have resulted in a different conclusion. Here, the petitioner had apparently been living on the streets for approximately 10 years, was not malnourished and did not appear to suffer any other adverse consequences by exposure to the elements. Thus, while the County presented evidence of a mental disorder, it failed to present any evidence that, as a result of the mental disorder, the petitioner was rendered incapacitated or unable to carry out transactions necessary for survival or to otherwise provide for his basic needs of food, clothing and shelter. (See, *Conservatorship of Smith* (1986) 187 Cal.App.3d 903, 909 [232 Cal.Rptr. 277].) Without evidence of the same, the court could not have found an appropriate basis for certification even with a preponderance of the evidence standard.

In summary, we determine that the County must bear the burden of proof, including the burden of persuasion, to justify the certification. We further determine that the appropriate standard of proof in these proceedings is preponderance of the evidence and that the same is constitutionally permissible.

## DISPOSITION

Judgment affirmed.

Campbell, P. J., concurred.

Petitioner's application for review by the Supreme Court was denied May 18, 1989.

---

[7] We are not unmindful of the symbolic value of the standard of proof recognized in *Addington* v. *Texas, supra,* 441 U.S. 418 and do not intend to suggest that loss of liberty for any length of time is equivalent to an ordinary money dispute. However, there is historical precedent for a lesser standard of proof even when liberty interests are at stake. (See, e.g., Pen. Code, § 872 (order holding defendant to answer justified by finding of sufficient cause to believe the defendant guilty).)