[No. A045076. First Dist., Div. One. Oct. 17, 1989.]

In re LOIS M. on Habeas Corpus.

**COUNSEL**

Robert Fairwell, Jr., and Daniel A. Pone for Petitioner.

Douglas J. Maloney, County Counsel, and Mari-Ann G. Rivers, Deputy County Counsel, for Respondent.

OPINION

**STEIN, J.**—Petitioner, Lois M., challenges her confinement in the locked mental health ward of Marin General Hospital. The decision to place her in the facility was made by her temporary conservator, the Public Guardian of the County of Marin, appointed pursuant to the provisions of the Lanterman-Petris-Short Act (LPS). (See Welfare and Institutions Code sections 5352.1, 5353, 5358.)[1] Protesting both her confinement and the fact of the appointment of the temporary conservator (*Conservatorship of Early* (1983) 35 Cal.3d 244, 255 [197 Cal.Rptr. 539, 673 P.2d 209]), appellant contends that the burden of proof must be placed on the county to justify her detention beyond a reasonable doubt or, at a minimum, by clear and convincing evidence. Respondent, County of Marin, urges that it was required only to demonstrate by a preponderance of the evidence that proper procedures had been followed in the making of the placement choice and that there was probable cause for the temporary conservator's decision; that upon such showing, the burden of proof shifted to petitioner to prove that there was no probable cause for her detention.

We hold that the county must justify petitioner's detention by a preponderance of the evidence.

BACKGROUND

"Under our current system, an individual may be brought to an appropriate facility for an evaluation if there is 'probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled.' (§ 5150.) If the facility admits the person, it may detain him or her involuntarily for no more than 72 hours for evaluation and treatment. (§ 5151.) At the end of the 72-hour period, the facility must release the person, refer the person for further care or treatment on a voluntary basis, institute conservatorship proceedings or certify the person for 14 days' involuntary treatment. (§ 5152.)

"An individual may be certified for intensive treatment if the professional staff at the facility has conducted an evaluation of the person and has found the person is a danger to himself or others or gravely disabled, as a result of mental disorder. The facility must be designated to provide intensive treatment and must agree to admit the person. Finally, the person must have been advised of the need for treatment and had been unwilling or unable to

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

accept treatment on a voluntary basis. (§ 5250.)" (*In re Azzarella* (1989) 207 Cal.App.3d 1240, 1245 [254 Cal.Rptr. 922]; fn. omitted.)

In accord with the statutory scheme, petitioner was placed on a 72-hour hold (§ 5150; § 5151) on January 9, 1989. Thereafter, she was certified for 14 days of intensive treatment (§ 5250) during which she made a request for release (§ 5275). The public defender was appointed for her and filed a petition for writ of habeas corpus (§ 5275; § 5276). An order to show cause issued, and a hearing was set for January 26, 1989. Petitioner, however, obtained private counsel; her writ petition challenging the 14-day certification was withdrawn.

Meanwhile, a request for conservatorship was made by petitioner's treating psychiatrist. The matter was referred to the public guardian for investigation and on January 27, 1989, a petition for the appointment of a conservator was filed. (§ 5350.) Included in that petition was a request for the appointment of a temporary conservator (§ 5352.1). Petitioner, through her private counsel, filed a new petition for writ of habeas corpus (§§ 5353, 5275, 5276) challenging her detention.

After the superior court denied petitioner relief, she filed a petition with this court on February 17, 1989. Subsequently, the petition for appointment of a conservator was dismissed.

## DISCUSSION

### *Mootness*

At the outset, the county argues that the matter is moot because of the dismissal of the conservatorship petition. The issues presented by the petition are, however, capable of repetition. They are of significant interest and likely to evade review. We thus address the merits of the petitioner's contentions. (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 876-877 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]; *In re Azzarella, supra,* 207 Cal.App.3d 1240, 1244, fn. 2.)

### *Burden of proof and standard of proof*

█ Petitioner contends that the superior court erred by failing to require the county to justify her detention beyond a reasonable doubt.

A proposed conservatee may challenge the appointment of a temporary conservator (*Conservatorship of Early, supra,* 35 Cal.3d 244, 255) and that person's placement choice in the same manner by which a detainee may

challenge a 14-day certification pursuant to section 5275. The burden of proof and standard of proof should be the same in each instance. We therefore hold, in accord with *In re Azzarella, supra,* 207 Cal.App.3d 1240, that principles of due process mandate that the government carry the burden of proof on the issue of the lawfulness of the detention without the benefit of any presumption of regularity, and that the standard of proof is that of a preponderance of the evidence.

In *In re Azzarella,* as here, the county had contended that the patient bore the burden of proof because the proceeding was one in habeas corpus. The *Azzarella* court noted that habeas corpus "traditionally is 'an extraordinary and *collateral* action that lies to review a claim of denial of substantive constitutional rights that may have affected the integrity of the fact finding process [citations], or a claim that attacks not the judgment itself but the legality of the punishment [citations].' (*In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2 [191 Cal.Rptr. 658, 663 P.2d 216].)" (*In re Azzarella, supra,* 207 Cal.App.3d 1240, 1246; italics in original.) ■ In contrast, a habeas corpus proceeding under sections 5275 and 5276 is "not a collateral attack on the validity of some prior proceeding. It is the sole avenue of review of the certification decision in many instances. Unlike traditional habeas corpus proceedings, the court acting under the statute has no discretion to summarily deny the petition but rather must either order the person released or conduct an evidentiary hearing." (*Ibid.*)

■ " 'Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt.' " (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) ■ Usually—as in this case—a proposed conservatee will have previously been subject to a 14-day certification; however, it is possible that detention for intensive treatment at the direction of a temporary conservator could be the first treatment detention for the patient. Due process demands that the government carry the burden of proof on the issue of the lawfulness of any such detention.

As to the standard of proof, we also agree with the court in *In re Azzarella, supra,* that the standard of proof should be one of preponderance of the evidence. As we have previously observed, " '[t]he function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." [Citation.] The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

" 'Generally speaking, the evolution of this area of the law has produced across a continuum three standards or levels of proof for different types of cases. At one end of the spectrum is the typical civil case involving a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion.

" 'In a criminal case, on the other hand, the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment.' (*Addington* v. *Texas* (1979) 441 U.S. 418, 423 [60 L.Ed.2d 323, 329, 99 S.Ct. 1804]; see generally *In re Winship, supra,* 397 U.S. 358, 370 . . . .)" (*Lillian F.* v. *Superior Court* (1984) 160 Cal.App.3d 314, 322-323 [206 Cal.Rptr. 603].)

There is, of course, no question that the proposed conservatee's interest, that of personal liberty, is a most cherished one; civil commitment is undeniably a significant deprivation of that interest. Still, the purpose of such confinement is for treatment, as promptly as possible, when voluntary efforts are not possible. ▆ While it is true that, unlike a patient detained for a 14-day certification, a proposed conservatee under a temporary conservatorship could be held in a state hospital (*In re Azzarella, supra,* 207 Cal.App.3d 1240, 1249; § 5358), the proposed conservatee, like any involuntary patient, has a specific array of rights with regard to treatment that may not be denied, among them the right to require proof by clear and convincing evidence that the patient is not capable of giving informed consent to convulsive treatment. (*Lillian F.* v. *Superior Court, supra,* 160 Cal.App.3d 314.)

▆ And, "the governmental interests and the fiscal and/or administrative burdens that may arise with a stricter standard of proof warrant use of a preponderance of the evidence standard. Society's interest in the appropriate certification of mentally disordered individuals is founded both in its interest in assuring public safety and in the concept of *parens patriae.* Its interests must be considered compelling. A stricter standard at this early phase may result in the government being unable to preserve its interests. The treating facility is required to make its evaluation and a determination whether treatment is warranted . . . Clearly, the ability to gather sufficient evidence . . . is affected by the time constraints imposed by the Legislature. Requiring a higher standard of proof may result in people in need of . . . assistance being released without receiving it.

" '[T]he utilization of the time of psychiatrists, psychologists, and other behavioral specialists in preparing for and participating in hearings rather than performing the task for which their special training has fitted them' also suggests a lower standard is preferred. [Citation.] A higher standard of proof could mean more extensive preparation and possibly longer hearings, causing more disruption of the treatment process." (*In re Azzarella, supra,* 207 Cal.App.3d 1240, 1250.) And, as we have seen, the statute generally contemplates a normal length of 30 days or less for a temporary conservatorship so that placement by such a conservator differs from the indefinite commitments in *Addington* v. *Texas* (1979) 441 U.S. 418 [60 L.Ed.2d 323, 99 S.Ct. 1804].

### Conclusion

We therefore hold that the government must carry the burden of proof on the issue of the lawfulness of the conservatee's detention and that the standard of proof to be applied is that of a preponderance of the evidence. The lower court's order denying the writ of habeas corpus is annulled. In all other respects—petitioner having now been released—the petition for writ of habeas corpus pending before us is denied; the order to show cause is discharged.

Racanelli, P. J., and Holmdahl, J., concurred.

Petitioner's application for review by the Supreme Court was denied January 4, 1990.