Filed 2/23/21  P. v. Harvey CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DAREION LEE HARVEY, Defendant and Appellant. | B304497 (Los Angeles County Super. Ct. No. BA205676) |

APPEAL from an order of the Superior Court of Los Angeles County, Norman J. Shapiro, Judge.  Affirmed.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Dareion Lee Harvey challenges the denial of his petition for resentencing under Penal Code section 1170.95[1] after briefing and a hearing at which he was represented by counsel. He contends the trial court erred by denying the petition without an evidentiary hearing and by relying on the appellate opinion from his direct appeal. We find no error and affirm.

**FACTUAL BACKGROUND[2]**

A man was shot in an alleyway in Los Angeles, in territory claimed by the Six-Deuce East Coast Crips. Three eyewitnesses testified that three or four men beat and punched the victim to the ground, then kicked him. One of the attackers then drew a gun and shot the victim five times, including a fatal shot to the chest. Two of the eyewitnesses identified appellant as the shooter.

Appellant, an active member of the Six-Deuce East Coast Crips, told law enforcement that he participated in the murder. He stated that he and two other gang members encountered the victim in their neighborhood and asked him where he was from. They beat the victim when he claimed that he was from the neighborhood. Appellant beat the victim and drew his gun to shoot the victim. One of appellant's companions was in the way,

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]Our factual narrative is drawn from our opinion in the prior appeal in this matter, *People v. Harvey* (June 25, 2003, B158517) [nonpub. opn.]. We note that appellant did not include a factual recitation in his brief "[s]ince this appeal only raises legal issues involving matters arising after appellant's conviction." He nevertheless refers us to our prior opinion. Appellant also refers us to the record from his direct appeal, of which we took judicial notice at his request.

however, so appellant did not shoot. The companion was the one who shot the victim.

## PROCEDURAL HISTORY

### I.    Trial and Direct Appeal

A jury convicted appellant of second degree murder. (§§ 187, 189.) The jury also found that the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), that appellant personally used a firearm (§ 12022.5, subd. (a)(1)), and that a principal personally and intentionally discharged a firearm causing death (§ 12022.53, subds. (d), (e)(1)). The trial court sentenced appellant to a total term of 50 years to life: 15 years to life for the murder, 10 years for his use of a firearm, and 25 years to life for the principal's intentional and fatal discharge of the firearm.

On direct appeal, appellant contended that the instructions the jury received were prejudicially erroneous. He argued that the assault mentioned in the instruction concerning the natural and probable consequences (NPC) doctrine was "simple misdemeanor assault," and "murder cannot be an NPC of a simple misdemeanor assault; therefore, the trial court erred in including 'assault'" in the instruction. Appellant argued in the alternative that if assault were a proper target crime, the court should have included involuntary manslaughter "as a possible NPC of misdemeanor assault."

We rejected these arguments. As relevant here, we stated: "Whatever the merits, in the abstract, of the proposition that murder cannot be an NPC of a simple misdemeanor assault, appellant's argument bears little relation to the evidence in this case and the manner in which this case was tried. [Citations.] [¶] Appellant admitted to the police that he drew his own gun

3

and would have shot the victim himself but for the fact that his fellow gang member Tiny TC was in the way, and Tiny TC shot the victim. There was no substantial evidence in this case, that the victim died as a consequence of a simple misdemeanor assault. He died as a consequence of a shooting, a shooting that appellant admitted he intended to encourage or facilitate. [¶] In his argument to the jury the prosecutor presented a simple straightforward case that appellant personally intended to kill the victim and was guilty of either first or second degree murder as a direct participant, either the actual shooter or an aider who drew his gun and intended to shoot. Despite having requested [the NPC instruction], the prosecutor did not rely upon, or even mention, the NPC doctrine in his argument to the jury. Under the circumstances, we find no merit to appellant's suggestion that one or more jurors might have convicted appellant based on an invalid theory that he aided and abetted a misdemeanor assault and could be found guilty of murder as an NPC of simple assault. [¶] . . . [¶] [A]ppellant's guilt under the evidence was clearly based on his own direct encouragement of a shooting and his own willingness to shoot, not upon a misdemeanor assault coupled with an abstract theory that murder could be an NPC of a simple assault. . . ."

We agreed with appellant—and accepted the Attorney General's concession—that the trial court erred in sentencing appellant for both firearm enhancements. We accordingly modified the judgment to strike the 10-year term for the personal use enhancement. We affirmed the judgment as modified.

## II. Section 1170.95 Proceedings

In January 2019, appellant filed, in propria persona, a petition for resentencing under section 1170.95. The "Appeal

4

Transcript Index" at the front of the CT gives a filing date of January 31, 2019.  The AOB notes that the date of mailing on the proofs of service is January 24, 2019.  In the petition and accompanying declaration, appellant asserted that he was convicted under the natural and probable consequences doctrine and was eligible for resentencing.  He asserted that the prosecutor had argued three theories to the jury:  (1) appellant was the shooter; (2) appellant aided and abetted the shooter; (3) appellant aided a lesser offense, such as assault, assault with a deadly weapon, or attempted murder, and first degree murder was a natural and probable consequence of that.  Appellant further claimed that the jury "did not fully except [*sic*] either the defense nor the prosecution's position" because it convicted him of second degree murder and found that another principal caused the victim's death.  Appellant requested the appointment of counsel.  The trial court granted that request.

On August 13, 2019, the prosecution filed an opposition to appellant's petition.  The prosecution argued that appellant was ineligible for relief because he was convicted as a direct aider and abettor.  The prosecution attached a copy of our prior opinion to its opposition.

Appellant's counsel filed a reply in support of the petition on January 7, 2020.  She argued that appellant was entitled to a full hearing on the merits because he was not the actual killer, and that the prosecution ultimately bore the burden of proving appellant's ineligibility beyond a reasonable doubt.

The trial court heard the petition on January 7, 2020; the prosecution and appellant's counsel were present at the hearing. Relying on our prior opinion, the court held that appellant was

5

ineligible for relief as a matter of law because he was convicted as a direct aider and abettor. Appellant timely appealed.

## DISCUSSION

### I. Governing Law

In 2018, the Legislature enacted Senate Bill No. 1437 (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) As amended by SB 1437, section 188, subdivision (a)(3) now provides that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189 provides that a participant in qualifying felonies during which a death occurs generally will not be liable for murder unless (1) he or she was "the actual killer," (2) he or she, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) he or she "was a major participant in the underlying felony [who] acted with reckless indifference to human life." (§ 189, subds. (e)(1)-(3).)

SB 1437 also added section 1170.95, which permits a person whose murder conviction could have been sustained under a felony murder theory or pursuant to the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95

6

must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).)

If the petition includes the required information, subdivision (c) of section 1170.95, prescribes "a two-step process" for the court to determine if it should issue an order to show cause. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted March 18, 2020, S260493 (*Verdugo*).) At the first step, the court's role "is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Id.* at p. 329.) In addition to the allegations of the petition, the court may review readily ascertainable information in the record of conviction and the court file, such as the information or indictment, the verdict form, and the abstract of judgment. (*Ibid.*) If these documents reveal that the petitioner is ineligible for relief, the trial court may summarily dismiss the petition. (*Id.* at p. 330.)

If the petition and record of conviction do not establish as a matter of law the petitioner's ineligibility for resentencing, evaluation of the petition proceeds to the second step of the prima facie review. At that step, "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo, supra*, 44 Cal.App.5th at p. 330.) The trial court must accept as true the petitioner's factual

allegations and make a preliminary assessment regarding whether the petitioner would be entitled to relief if the factual allegations were proved. (*Id.* at p. 328.) The trial court's authority to make factual determinations at this stage extends only to "readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).)

If the trial court concludes the petitioner has made a prima facie showing that he or she is entitled to relief, it must issue an order to show cause. (*Verdugo, supra*, at p. 328.) "Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Verdugo, supra*, 44 Cal.App.5th at p. 327, citing § 1170.95, subd. (d)(1).) The parties may rely on the record of conviction or present "new or additional evidence" to support their positions. (§ 1170.95, subd. (d)(3).)

We review de novo the predominantly legal question of whether a petitioner has made a prima facie showing. (See *Drayton, supra*, 47 Cal.App.5th at p. 981; see also *Smiley v. Citibank, N.A.* (1995) 11 Cal.4th 138, 146 ["Independent review is called for when the underlying determination involves a purely legal question or a predominantly legal mixed question."].)

## II. Analysis

Appellant contends the trial court violated "the clear terms" of section 1170.95 by denying his petition without a full evidentiary hearing. He asserts that his petition stated a prima

8

facie case for resentencing, and the trial court "erred by ignoring the requirements of section 1170.95, and conflating the requirements of subdivisions (c) and (d) by stepping outside the four corners of appellant's petition to conduct an unauthorized investigation." He further argues the trial court erred "by engaging in an analysis of the evidence as outlined in the Court of Appeal opinion, adopting the facts stated in the opinion as true, and adopting the opinion's credibility determinations . . . to conclude appellant's petition was 'not . . .within the meaning of Senate Bill 1437,' without appellant being afforded an opportunity to present new or additional evidence."

These arguments are not persuasive. "A court of appeal opinion, whether or not published, is part of the appellant's record of conviction." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 333.) As a general rule, the trial court may consider the entire record of conviction, including the appellate opinion, when ruling on a petition for resentencing. (*People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110.) Analogous petitioning procedures for resentencing under sections 1170.18 and 1170.126 contemplate a gatekeeping function in which trial courts review the record of a petitioner's conviction to determine if the allegations set forth by the petitioner are untrue as a matter of law. (See *People v. Washington* (2018) 23 Cal.App.5th 948, 955 [§ 1170.18]; *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 6-7 [§ 1170.126].) Petitions brought under section 1170.95 are not an exception to this general rule.

As appellant points out, section 1170.95 expressly contemplates use of the record of conviction at the evidentiary hearing conducted after the trial court has issued an order to show cause. Subdivision (d)(3) states that both the "prosecutor

9

and the petitioner may rely on the record of conviction . . . to meet their respective burdens." (§ 1170.95, subd. (d)(3).) The statute also allows consideration of the record of conviction at the first stage of prima facie review, in which the court must determine whether a petitioner "falls within the provisions of this section" based on "all the requirements of subdivision (a)." (§ 1170.95, subds. (b)(1), (c).) "If any of the information required" in the petition is missing, the trial court may deny the petition unless the missing information can be "readily ascertained by the court." (§ 1170.95, subd. (b)(2).) To "readily ascertain[ ]" missing information, the court must be permitted to consider documents outside the petition, including the record of conviction; otherwise, this statutory language would be rendered meaningless. (See *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 249.)

When considering any part of the record of conviction, including a prior appellate opinion, during the first stage of its prima facie review, the trial court must limit its review to determining whether the petitioner is ineligible for relief as a matter of law. (*Verdugo, supra*, 44 Cal.App.5th at pp. 328-330; *Drayton, supra*, 47 Cal.App.5th at p. 980.) A trial court may "look to a court ruling, including an appellate opinion, for the nonhearsay purpose of determining the basis of the conviction." (*People v. Woodell* (1998) 17 Cal.4th 448, 459; see also *People v. Trujillo* (2006) 40 Cal.4th 165, 180 ["an appellate court decision . . . can be relied upon to determine the nature of a prior conviction because it may disclose the facts upon which the conviction was based"].) It may not make factual findings involving the weighing of evidence or the exercise of discretion, "such as determining whether the petitioner showed reckless indifference

10

to human life in the commission of the crime." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

Appellant's claim that the trial court engaged in impermissible fact-finding here is not supported by the record. The trial court found that the record of conviction—our prior opinion—demonstrated that appellant was convicted as a direct aider and abettor. Indeed, we determined that any possible instructional error concerning the natural and probable consequences doctrine was harmless because "appellant's guilt under the evidence was clearly based on his own direct encouragement of a shooting and his own willingness to shoot." In relying on this holding, the trial court did not weigh evidence, exercise its discretion, or "adopt[ ] the opinion's credibility determinations." It correctly ascertained that the question of whether appellant acted as an aider and abettor had been litigated and resolved against him. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted March 18, 2020, S260598.) Our determination that appellant was convicted under an aiding and abetting theory refutes his conclusory assertions that the prosecutor argued, and the jury may have relied upon, the natural and probable consequences doctrine to convict him. While the trial court must assume all facts in a section 1170.95 petition are true and should not evaluate their credibility, "it need not credit factual assertions that are untrue as a matter of law." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) The trial court did not err in denying appellant's petition.

11

## DISPOSITION

The order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


COLLINS, J.

We concur:


MANELLA, P. J.


WILLHITE, J.