Filed 1/24/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C097934 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CR17324) |
| v. | |
| CLIFFORD JAMES SMYTH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Glenn County, Donald Cole Byrd, Judge. Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

Clifford James Smyth appeals from the trial court's order denying his Penal Code section 290.5 petition for termination from the California sex offender registry.[1]  Smyth is not registered as a sex offender in California.  In support of his petition, he submitted evidence that he is currently registered in Oregon, where he resides.  On appeal, he argues the denial of his petition must be reversed because the requirement that a petition be filed in the county where the individual is registered is contrary to legislative intent, absurd, and violates equal protection.  We affirm the order.

## I.  BACKGROUND

Section 290 requires persons convicted of certain specified sex crimes to register as sex offenders with local law enforcement as long as they reside, attend school, or work in California.  (§ 290, subds. (b), (c); *People v. Mosley* (2015) 60 Cal.4th 1044, 1048.)  The statute " 'is intended to promote the " 'state interest in controlling crime and preventing recidivism in sex offenders' " ' [citation] and serves 'an important and vital public purpose by compelling registration of many serious and violent sex offenders who require continued public surveillance.' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 877.)  Until recently, the obligation to register was lifelong.  (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.)  "Commencing January 1, 2021, Senate Bill No. 384 (2017-2018 Reg. Sess.) [(Senate Bill No. 384)] . . . restructured the sex offender registration requirement, establishing three tiers of registration for sex offenders, primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier three).  (Stats. 2017, ch. 541, § 2.5; see § 290, subd. (d).)" (*People v. Thai* (2023) 90 Cal.App.5th 427, 432 (*Thai*).)  Senate Bill No. 384 "established procedures for a person to seek termination from the sex offender registry if

[1] Undesignated statutory references are to the Penal Code.

2

the person meets certain criteria, including completion of the mandated minimum registration period. (§ 290.5, subds. (a)-(c).)" (*Thai, supra,* at p. 432.)

Section 290.5, subdivision (a)(1) provides, in relevant part, "A person who is required to register pursuant to Section 290 and who is a tier one or tier two offender may file a petition in the superior court in the county in which the person is registered for termination from the sex offender registry . . . following the expiration of the person's mandated minimum registration period . . . . The petition shall contain proof of the person's current registration as a sex offender." A petitioner must serve the petition on the registering law enforcement agency, the district attorney in the county where the petition is filed, and the law enforcement agency and district attorney in the county where the defendant was convicted of the registerable offense. (§ 290.5, subd. (a)(2).) The law enforcement agencies must report to the district attorney and the superior court where the petition is filed regarding whether the petitioner has met the requirements for termination under section 290, subdivision (e). (§ 290.5, subd. (a)(2).) The district attorney may request a hearing to "present evidence regarding whether community safety would be significantly enhanced by requiring continued registration." (§ 290.5, subd. (a)(3).)

Smyth was designated by the Department of Justice as tier two. In August 2022, he filed a petition pursuant to section 290.5 in Glenn County. The Glenn County district attorney filed a response asserting Smyth had not fulfilled the statute's filing and service requirements because he does not register in Glenn County, does not register in California at all, and resides in Oregon.

The court denied the petition. The court found Smyth is not currently registered as a sex offender in Glenn County or in California.[2]

---

[2] The trial court's written order also indicated Smyth had not met the minimum time requirements of section 290, subdivision (e). Smyth asserts the court found he did not meet these requirements because he was an out-of-state registrant. This conclusion is not

3

## II. DISCUSSION

### A. *Standard of Review*

"An appellate court reviews the trial court's ruling on a petition for termination from the sex offender registry for abuse of discretion." (*Thai, supra*, 90 Cal.App.5th at p. 433.) " 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*Ibid.*)

### B. *Statutory Construction*

Smyth challenges the trial court's legal conclusion that he was not eligible for relief under section 290.5 because he is not registered as a sex offender in California. We review this issue de novo.

In construing a statute, "[o]ur fundamental task is to determine the Legislature's intent and give effect to the law's purpose. [Citation.] We begin by examining the statute's words ' "because they generally provide the most reliable indicator of legislative intent." [Citation.] If the statutory language is clear and unambiguous our inquiry ends.' [Citation.] However, we 'will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended.' " (*In re D.B.* (2014) 58 Cal.4th 941, 945-946.)

---

clear from the trial court's ruling. "The minimum time period for the completion of the required registration period in tier one or two commences on the date of release from incarceration, placement, or commitment, including any related civil commitment on the registerable offense." (§ 290, subd. (e).) The minimum period is extended by a conviction for failing to register under the act (*ibid.*), but an individual who leaves California cannot be convicted of failing to register (see *People v. Wallace* (2009) 176 Cal.App.4th 1088, 1102-1103). Nothing in the record establishes Smyth has met the minimum period, but we do not address this issue because it was unbriefed.

Smyth implicitly concedes the plain language of section 290.5 does not allow him to file a petition because he is not registered in any California county.  (See § 290.5, subd. (a)(1) ["A person who is required to register pursuant to Section 290 and who is a tier one or tier two offender may file a petition in the superior court in the county in which the person is registered for termination from the sex offender registry"].)  This fact alone evinces the Legislature's intent to provide relief only to those individuals who are registered in California.  Indeed, the relief provided for in section 290.5 is "termination from the sex offender registry."  (*Ibid*.)  Smyth does not identify any ambiguity in the statute for us to construe.  Rather, he argues precluding out-of-state residents from relief "is both absurd and contrary to the Legislature's intent in enacting the tiered system for registration relief."  We disagree.

As Smyth notes, the legislative history for Senate Bill No. 384 explains "California is one of the few states that requires lifetime registration with no discernment for the type of offense."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 384 (2017-2018 Reg. Sess.) Sept. 15, 2017, p. 5.)  California was one of only four states "without some form of tiering.  While this allows the public to see a majority of offenders, the public and local law enforcement ha[d] no way of differentiating between higher and lower risk offenders."  (*Ibid*.)

The arguments in favor of Senate Bill No. 384 included the assertion that "it is estimated that local law enforcement agencies spend between 60-66% of their resources dedicated for sex offender supervision on monthly or annual registration paperwork because of the large numbers of registered sex offenders on our registry.  If we can remove low risk offenders from the registry it will free up law enforcement officers to monitor the high risk offenders living in our communities.  Law enforcement cannot protect the community effectively when they are in the office doing monthly or annual paperwork for low risk offenders, when they could be out in the community monitoring high risk offenders.  [¶]  Furthermore, the public is overwhelmed by the number of

5

offenders displayed online in each neighborhood and do not know which offenders are considered low risk and which offenders are considered high risk and therefore truly dangerous." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 384 (2017-2018 Reg. Sess.) Sept. 15, 2017, pp. 7-8.)

Smyth argues excluding him from relief is contrary to the legislative intent to remove low risk-offenders from the duty of life-long registration, alleviate the burden of perpetual surveillance on law enforcement, and eliminate unwarranted public concern. These arguments are unavailing because, as someone not registered in California, none of the Legislature's concerns apply to him.

The fact section 290.5 does not apply to individuals who are not registered in California is consistent with legislative intent and not absurd. The bill was designed to rectify problems with California's sex offender registry. As the bill recognized, other registries operate differently. Section 290.5 provides registrants relief from California's sex offender registration requirements and conserves local law enforcement resources. An out-of-state individual is already relieved of these requirements and does not require the expenditure of local law enforcement resources for monitoring. Therefore, permitting an out-of-state registrant to file a petition under section 290.5 in California would only add to the burden on local law enforcement. Smyth claims he cannot get relief in Oregon until he is relieved of his registration obligation in California, but that does not appear to be an accurate representation of Oregon law. (See Or. Rev. Stats. § 163A.125, subd. (1)(d) ["if a person is required to report because of a conviction . . . from another United States court . . . , the person may not petition for relief from reporting as a sex offender in Oregon unless the laws of the jurisdiction where the person was convicted . . . would permit a petition for relief from reporting as a sex offender"].) Even if it was, it is neither absurd nor contrary to legislative intent for the California legislature to leave it to Oregon to decide eligibility for relief from whatever Oregon's particular reporting requirements are. The trial court did not err in concluding section 290.5 precludes sex offenders who

6

are not registered under section 290 from filing for relief from those registration requirements.

## C.      *Equal Protection*

On appeal, Smyth asserts that excluding out-of-state registrants from obtaining relief under section 290.5 violates principles of equal protection.  He forfeited this argument by failing to raise it in the trial court.  (*People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14; *People v. Rogers* (2006) 39 Cal.4th 826, 854.)  Even if we were to exercise our discretion to reach the issue, we would reject Smyth's claim.  (See *In re Spencer S*. (2009) 176 Cal.App.4th 1315, 1323 ["appellate courts have discretion to address constitutional issues raised on appeal [citation], particularly where the issue presented is 'a pure question of law' turning on undisputed facts [citation] or when ' "important issues of public policy are at issue" ' "].)

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  Absent this threshold requirement, no inquiry into the justification for the legislative distinction is necessary.  (*People v. Barrett* (2012) 54 Cal.4th 1081, 1107.)  "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Cooley, supra*, at p. 253.)  Smyth argues he is similarly situated to California registrants because he, like an eligible in-state registrant, no longer poses a danger to the community nor warrants continuous police surveillance.  We agree with the People that out-of-state registrants are not similarly situated to California registrants for purposes of section 290.5, because they do not contribute to the problems identified by the Legislature when it decided to adopt the statute.  Out-of-state registrants are not monitored by California law enforcement and do not overwhelm the California public because their names do not appear in its registry.

7

Even if we assumed individuals required to register in other states are similarly situated to sex offenders required to register in California, defendant's equal protection claim would fail because the distinction between the two groups survives the requisite degree of scrutiny. "Because sex offender registration does not implicate a suspect class or a fundamental right, rational basis review applies here." (*Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 511.) "Under these principles, equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.] In other words, the legislation survives constitutional scrutiny as long as there is ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." ' [Citation.] This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74-75.)

We agree with the People that allowing only California registrants to petition to terminate their California registration is reasonably related to the state's interests in preserving its own law enforcement resources and focusing those resources on public safety in California. There is no equal protection violation.

8

## III.  DISPOSITION

The order is affirmed.


/S/

_____
RENNER, J.


We concur:


/S/

_____
EARL, P. J.


/S/

_____
KEITHLEY, J.*

_____

\* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9